THE ROYAL BANK OF CANADA, DEMANDANTE Y APELADO, *v.* PORTO RICO CITRUS FRUIT COMPANY, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre cobro de pagaré.

No. 2521.—Resuelto en julio 12, 1923.

OBLIGACIONES—PRINCIPAL—AGENTE.—Un principal no es responsable por virtud de un pagaré en el cual se ha suscrito su nombre por una persona como agente, pero que no tiene autorización ya real o aparente.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. O. M. Wood* y *Soto Gras & Siaca.*

Abogados del apelado: *Sres. Chas. Hartzell* y *F. Ramírez de Arellano.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

En una acción sobre cobro de un pagaré suscrito "P. R. Citrus Fruit Company, J. M. Kohn, Mgr.," la corte de distrito dictó sentencia a favor del demandante fundada en los siguientes hechos probados:

"Celebrado el juicio y practicada la prueba, la corte ha llegado a la conclusión de que Mr. J. M. Kohn, era el Manager de The Porto Rico Citrus Fruit Company, y como tal estaba autorizado para en nombre de la Corporación que representaba, cobrar, vender, librar

cheques, etc., y si bien alega no estaba autorizado de una manera expresa para firmar pagarés a nombre de la corporación de la que era él Administrador en Puerto Rico, tampoco le había sido prohibido, y si podía obligar a la corporación con el libramiento de cheques, no vemos la razón por qué no podía hacerlo por medio de pagarés.

"Mr. Strayer, a favor de quien fué firmado el pagaré, era un cliente de la demandada, y por esta razón fué que Mr. Kohn no tuvo inconveniente en firmarle el pagaré, como manager de la corporación demandada y entregárselo al Sr. Strayer, y así nos dice Mr. Kohn en su declaración, que al ir a pagarle al Sr. Strayer la cantidad que la demandada le adeudaba a virtud de ciertas operaciones que habían existido con la demandada, le preguntó al Sr. Strayer si ya había recogido el pagaré, y que al contestarle Mr. Strayer que sí, y que el pagaré se le había traspapelado, aceptó esta explicación como buena y le pagó lo que la casa demandada le adeudaba.

"De esta prueba relacionada con el resto, se ve que Mr. Kohn se consideraba con poderes bastantes para el libramiento del pagaré y sabía que al firmarlo había obligado a la casa de la cual era manager."

En el juicio declaró Kohn que era "manager" de la "Bayamón Fruit Plantation"; que como tal manager tomaba bajo su control el desenvolvimiento de las frutas de la compañía; que era manager de la finca; que sus deberes y poderes consistían en tomar nota del desenvolvimiento de la finca y atender al embarque de las frutas, que no tenía facultades para suscribir pagarés obligando a la compañía; que le dijo a Strayer que no estaba autorizado para firmar, pero Strayer insistió en que él podía firmar y se lo pidió como favor personal; que el testigo no sabía exactamente por qué Strayer quería que él firmase; que Strayer vino una mañana con mucha prisa; que la compañía le debía cierta cantidad de dinero; que el testigo le dijo que no podía tomar ninguna determinación de primer momento; que Strayer dijo al testigo que le diera su pagaré y él arreglaría lo demás; que el pagaré era por la cantidad que entonces debía la compañía; que al pagarse la cantidad el testigo pidió la devolu-

ción del pagaré; que Strayer dijo al testigo que el pagaré estaba ya vencido y había sido pagado, preguntando al testigo que para qué quería el pagaré y manifestó que él, Strayer, no lo había podido encontrar en su escritorio; que el testigo estaba autorizado para comprar efectos para la compañía y ésta mandaba el dinero para pagarlos; muchas veces el testigo depositaba el dinero a su nombre y expedía cheques por cuenta personal; que en algunas ocasiones el testigo firmó cheques a nombre de la compañía y tenía facultades para ello, pero no para firmar pagarés; que la compañía mandaba el dinero al testigo quien lo ponía en el banco y entonces expedía los cheques; que muchas veces cuando no tenía dinero la compañía, el testigo usaba su propio dinero; que los $4,000 y pico de pesos pagados a Strayer (en pago total de la cuenta de la compañía, y después de vencido el pagaré) incluían los $1,700 importe del pagaré; que la compañía recibió los efectos representados por el pagaré, pero no fueron comprados con el pagaré; que esta no fué la única ocasión en que el testigo había suscrito un pagaré por cuenta de la compañía; que cuando la compañía necesitaba que se firmase un pagaré le daba al testigo un poder especial.

Willis C. Spaulding, secretario y tesorero de la compañía demandada, declaró en sustancia que nadie estaba autorizado para firmar pagarés a nombre de la "Porto Rico Citrus Fruit Company" sin la autorización expresa de la junta directiva en cada caso; que Kohn era el administrador y superintendente de la plantación de la compañía en Puerto Rico; que él nunca había sido autorizado para suscribir pagarés a nombre de la compañía con anterioridad al día 10 de octubre de 1918; que Kohn nunca fué autorizado por la compañía para firmar el pagaré transcrito en la demanda a nombre de la compañía; que la compañía jamás había ratificado o aceptado la firma de Kohn en ese pagaré como obligatoria para ella; que al testigo nunca se le pidió

que ratificara la firma de Kohn en dicho pagaré de modo que pudiera obligarse a la compañía; que al testigo nunca se le dijo que aceptara o negara la validez de dicho pagaré por tener la firma de Kohn; que el "Royal Bank of Canada" nunca había tenido ninguna conversación o. correspondencia con el testigo o la compañía demandada en este asunto, con excepción de que cuando el testigo estuvo en Puerto Rico a principios del año 1918, el manager del banco preguntó al testigo si la compañía iba a pagar el pagaré, manifestando él que dicho pagaré había sido pasado a ellos como colateral; que el testigo contestó que el pagaré había sido satisfecho. una vez y la compañía ciertamente se negaría a pagarlo de nuevo; que esta conversación fué con el Sr. Allen, el manager del banco; que los deberes del administrador de la "Porto Rico Citrus Fruit Company" en Puerto Rico eran administrar y atender al desenvolvimiento de esta plantación y a la·producción de frutas de la compañía a lo que se dedica, o en otras palabras, a las obligaciones generales de un administrador de finca; que de acuerdo con los reglamentos ninguna persona o personas están autorizadas para firmar pagarés u otros documentos que obliguen a la compañía menos como está autorizado por la Junta Directiva que regula cada caso; que esta facultad la tiene única y exclusivamente de acuerdo con los reglamentos la Junta Directiva; que allá para el día 26 de octubre, 1916, el testigo era secretario y tesorero y estaba a cargo de la oficina principal de la compañía demandada; que el testigo no tuvo ningún conocimiento de haberse suscrito el pagaré de $1773.18 a favor de Strayer de fecha abril 26, 1916, para cubrir el precio de mercancías compradas a Strayer y entregadas a la compañía demandada, ni del pago subsiguiente de esa cantidad, sino que luego fué informado de que el manager había dado tal pagaré y lo había pagado; que hasta entonces Kohn no había suscrito pagarés u otros documentos para la compañía demandada en ninguna otra oca-

sión. Interrogado si la compañía demandada alguna vez había o no rechazado la firma de W. J. M. Kohn en pagarés u otros documentos para la compañía, contestó el testigo "No, ellos no han tomado acción en uno u otro sentido." Interrogado si en este caso en particular la compañía demandada había usado o no los efectos comprados a Strayer y comprendidos en este pagaré, contestó el testigo, "No tengo conocimiento de ello."

La declaración de Fred H. Ferguson, presidente de la compañía, es más o menos en el mismo sentido, con excepción de que no había habido comunicación de ninguna clase entre él y el banco.

El pagaré fué suscrito en abril de 1916, y a vencer dos meses después de su fecha. La cuenta de Strayer fué pagada en julio por un cheque de $4640.67 contra el American Colonial Bank, el cual fué endosado por Strayer a la orden del "American Colonial Bank" como depósito a su cuenta.

No existe prueba que demuestre que algún funcionario de la compañía jamás hubiera tenido conocimiento de que el pagaré lo tenía el demandante como colateral, o siquiera de que el pagaré había sido suscrito con anterioridad a la fecha de la conversación habida entre Allen y Spaulding en el año 1918. Que el banco tuvo el pagaré por dos años o más después de su vencimiento sin comunicarse con los funcionarios u oficina principal o el agente local residente de la compañía es una circunstancia significativa.

Sobre este punto el abogado del banco expresa en su alegato que—

"Porto Rico Fruit Company sabía la existencia de ese pagaré hasta el extremo de que Willis M. Spaulding, secretario y tesorero de la Porto Rico Citrus Fruit Company, en su declaración que obra en autos, refiere que el pagaré había sido pagado ya una vez por la compañía, y que no lo pagarían dos veces.

"Así lo manifestó el Sr. Spaulding al Sr. Allen, General Manager

que era en aquel tiempo de The Royal Bank of Canada, y esta manifestación fué la que determinó la presentación de esta acción.''

La mera manifestación hecha por Spaulding de que el pagaré había sido satisfecho una vez, no implica necesariamente que él tuviera conocimiento de la existencia del pagaré antes de la fecha de esa conversación. El pudo haber recibido su primera información en cuanto a esto de Allen al mismo tiempo en que Allen le manifestó que el banco tenía el pagaré como colateral. Aún cuando así no fuera, él pudo haber tenido conocimiento de los hechos en cualquier tiempo durante los dos años que habían transcurrido después de vencido el pagaré.

La indicación de que el pagaré había sido pagado, unida a la negativa a verificar su pago y aducida como razón para tal negativa, considerada a la luz de todas las circunstancias, no constituía una ratificación de la actuación no autorizada por parte del administrador de la finca. Interpretada literalmente y considerada como la exposición de una proposición legal técnica, la corrección absoluta de la conclusión envuelta puede estar sujeta a duda. Tal vez si una contestación en que se alegue una defensa en el mismo lenguaje estaría sujeta a excepción previa. Pero no podemos admitir que tal error con respecto al efecto legal del pago hecho a Strayer, de ser un error, constituye un impedimento para poder alegar la ausencia total de alguna autorización por parte del administrador de la finca para firmar el pagaré. Y si la regla general fuera de otro modo bien podríamos dudar en aplicarla en este caso en el cual el efecto sería privar a la demandada de tal defensa en una acción por un tercero que está en posesión del pagaré como garantía colateral y establecida por virtud del mismo dos años después del vencimiento sin previa investigación o pesquisa con respecto a dicha autorización, o sin la oportuna notificación a los funcionarios u oficina principal o al agente

local residente de la compañía demandada sobre la existencia del derecho a reclamación del demandante.

Enumerar todo lo que la demandada pudo haber hecho, pero que no hizo, con el fin de diferenciar el presente caso de las autoridades citadas por el banco, no tendría ningún fin práctico. No encontramos ninguno de los elementos necesarios para que el presente caso quede comprendido en ninguna de las excepciones reconocidas a la regla general de que un principal no es responsable por virtud de un pagaré en el cual se ha suscrito su nombre por una persona que parece ser su agente, pero que no tiene autorización ya real o aparente.

La diferencia entre la facultad para expedir cheques a nombre de una corporación después de abierta una cuenta, y el acto de depositar dinero a nombre de la corporación por un empleado que en relación con la administración de una finca está autorizado para comprar y pagar efectos y que luego expide cheques contra tal cuenta, y la facultad para otorgar pagarés a nombre de dicha corporación es demasiado clara para que requiera seria discusión. Las líneas generales de separación entre las facultades y deberes de un administrador de una finca y los de un administrador general de una corporación son igualmente claras.

En qué circunstancias un banco estaría justificado en asumir sin hacer una investigación que el "manager general," o "manager general" residente de una corporación extranjera tiene facultades para otorgar pagarés a nombre de tal corporación, es una cuestión que debe resolverse cuando surja.

No encontramos en los autos base alguna para las conclusiones a que llegó la corte inferior, debiendo, por tanto, revocarse la sentencia.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Franco Soto.